



## MEMORANDUM OPINION

No. 04-10-00360-CV

**BIOLUSTRE' INC.**,
Appellant

v.

**HAIR VENTURES LLC**,
Appellee

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CI-00217
Honorable Barbara Hanson Nellermoe, Judge Presiding[1]

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  February 16, 2011

AFFIRMED

Biolustre' Inc. appeals the trial court's order granting Hair Ventures LLC's request for a writ of mandamus to compel Biolustre' to produce its books and records for inspection. Biolustre' asserts the trial court's order was erroneous because the great weight and preponderance of the evidence established: (1) Hair Ventures had improperly used information obtained from a previous examination of Biolustre's books and records; and (2) Hair Ventures

---

[1] The Honorable Olin Strauss presided over the hearing in the underlying cause, verbally pronounced a ruling, and entered the findings of fact and conclusions of law.  The Honorable Barbara Hanson Nellermoe signed the written mandamus order.

was not acting in good faith or for a proper purpose in requesting the examination. Biolustre' also asserts the trial court erred in admitting a "business agreement" into evidence. We affirm the trial court's judgment.

## PROCEDURAL BACKGROUND

Hair Ventures owns 3,000,000 shares of Biolustre's stock. On November 2, 2009, Hair Ventures sent Biolustre' a written demand for an examination of Biolustre's books and records as permitted by Texas law. After Biolustre' failed to respond to the demand, Hair Ventures filed a petition for writ of mandamus in the trial court, seeking to compel the examination. Since neither party requested a jury trial, a bench trial was held, and the trial court signed an order directing Biolustre' to produce its books and records for fiscal years 2007 through the date of production. The trial court subsequently entered written findings of fact and conclusions of law in which the trial court found Hair Ventures had a proper purpose for seeking the inspection of the company's books and records.

## STANDARD OF REVIEW

If a corporation denies a shareholder's request to inspect the corporation's books and records, the shareholder may file a petition for writ of mandamus requesting that the trial judge order the corporation to allow an inspection of its records. *Uvalde Rock Asphalt Co. v. Loughridge*, 425 S.W.2d 818, 820 (Tex. 1968); *In re Dyer Custom Installation, Inc.*, 133 S.W.3d 878, 881 (Tex. App.—Dallas 2004, orig. proceeding); *see also* TEX. BUS. ORGS. CODE ANN. § 21.218 (West 2010) (giving shareholder right to examine books and records). Generally, the granting of mandamus relief is subject to the trial court's discretion and would be reviewed for an abuse of discretion. *Moore v. Rock Creek Oil Corp.*, 59 S.W.3d 815, 817 (Tex. Comm'n App. 1933, judgm't adopted). "[W]here a corporation, in resisting a stockholder's attempt to inspect

the books and records, raises by its pleadings a fact issue over whether the stockholder has a proper purpose for wanting to see the books," the corporation is entitled to a jury trial on that issue. *Uvalde Rock Asphalt Co.*, 425 S.W.2d at 820; *see also In re Dyer Custom Installation, Inc.*, 133 S.W.3d at 881. Accordingly, when a finding regarding the shareholder's purpose in requesting an inspection is challenged on appeal, we review the sufficiency of the evidence to support the finding.

When reviewing a legal sufficiency or "no evidence" challenge, we determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Id*. Appellate courts will sustain a legal sufficiency or "no evidence" challenge when: (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). By contrast, when reviewing a factual sufficiency challenge, we consider and weigh all the evidence supporting and contradicting the finding. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside the finding only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). The trier of fact is the sole judge "of the credibility of the witnesses and the weight to give their testimony." *City of Keller*, 168 S.W.3d at 819.

## DISCUSSION

As previously noted, a shareholder has a right to inspect the books and records of a corporation. TEX. BUS. ORGS. CODE ANN. § 21.218 (West 2010). A corporation may defend against an action by a shareholder seeking to inspect its books and records by establishing that the shareholder: (1) has improperly used information obtained through a prior examination; or (2) was not acting in good faith or for a proper purpose in making the request for examination. TEX. BUS. ORGS. CODE ANN. § 21.221(3), (4). Although Biolustre' makes reference to both of these defenses in its answer, it does not affirmatively plead that Hair Ventures obtained information through a prior examination.[2] *See Uvalde Rock Asphalt Co.*, 425 S.W.2d at 820 (corporation must raise fact issue on defense in pleadings); *Moore*, 59 S.W.2d at 818 (noting corporation must plead defense); *In re Dyer Custom Installation, Inc.*, 133 S.W.3d at 881 (noting corporation must plead sufficient facts to raise defense). Accordingly, the only defense properly presented at trial was whether Hair Ventures was making the request in good faith and for a proper purpose. As a result, Biolustre's first issue regarding improper use of information obtained through a prior examination is overruled.

Stanka Woods is the manager and sole member of Hair Ventures. In addition to Hair Ventures owning 3,000,000 shares of Biolustre's stock, Woods also had loaned Biolustre' approximately $440,000, of which only $10,500 has been repaid. In 2005 and 2006, Woods worked for Biolustre' as international sales manager and director of finance. Woods had not received notice of any annual shareholders meetings and had not received any annual fiscal reports since 2006. Woods also never received notice of a shareholders meeting to discuss and vote on a public offering of Biolustre's stock. Woods stated that she did not intend to harm the

---

[2] We also note that no evidence was presented that Hair Ventures had previously examined the company's books and records pursuant to section 21.218 of the Texas Business Organizations Code.

company, but wanted to examine the books to obtain information regarding "what's going on with the company." On cross-examination, Woods testified that she was unaware of whether her boyfriend, Daniel Davila, contacted other shareholders to complain about Biolustre's general operations. Woods testified that she would maintain the confidentiality and privacy of any shareholder list that was made available to her for examination.

Leonard Buchanan, the company's chief operating officer, admitted that he had received Hair Ventures's demand to inspect the company's books and records. Buchanan stated that Biolustre' did not hold a shareholders meeting in 2006, 2007, or 2008, but had sent a shareholder review and report by email. Buchanan testified "that according to our bylaws, we send out investor reports and those act as our shareholder meetings." Buchanan testified that the shareholders were emailed an update regarding the public offering which allowed the shareholders to respond, and no negative feedback was received. Buchanan stated, "All shareholders were in favor of moving forward with this." Buchanan further testified, "there has a — a vote to move forward by the majority shareholders, which are myself and Mr. Mata, and all other shareholders have been informed of the direction that the company was going in." Buchanan explained that the minority shareholders "were allowed to state their opinion." Buchanan testified that the concern with allowing Woods access to shareholder information was potential misuse of the information by Davila. Buchanan did not believe that the shareholder information would remain confidential if it was disclosed to Woods.

Two other Biolustre' shareholders testified. Roy Lane became a shareholder of Biolustre' in May of 2006. In November of 2009, Davila told Lane that Buchanan and Michael Mata, the company's chief executive officer, were trying to do things with the company that Davila did not want them to do. Davila told Lane that he planned to set up an investor meeting

to discuss the company's operations in England and to prevent the public offering of the company's shares. Lane had never received a notice of an annual shareholders meeting, but had received newsletters regarding the company's progress. Lane did not recall receiving any information about the company making a public offering of its stock. Lane did not attend a shareholder meeting to vote on a public offering.

Guadalupe Moreno also became a shareholder of Biolustre' in 2006. In the year before trial, Davila had contacted Moreno several times about participating in a class action lawsuit. Davila told Moreno that the chief financial officer and chief operating officer were stealing money from the shareholders and using it for their own purposes. Specifically, Davila told Moreno that the company's money was being misused on traveling expenses. Moreno stated that he had not spoken with Woods. Moreno was unaware of whether he voted in reference to the public offering.

After hearing the evidence, the trial court found that Hair Ventures had a proper purpose for seeking the inspection. All of the shareholders testified that they had not received notice of a meeting to vote on the public offering of Biolustre's stock. Woods also testified that she had not received any financial information regarding the company since 2006. In view of Hair Ventures's substantial investment and interest in the company, obtaining information about the financial position of the company and its proposed public offering was a proper purpose for inspecting the records. Although the trial court heard testimony regarding Davila's contact with other shareholders, the trial court could properly have found that Davila's conduct should not prevent Hair Ventures from exercising its right as a shareholder to inspect the corporation's books and records. *See Moore*, 59 S.W.2d at 819 (holding motive of non-shareholder could not be fairly imputed to shareholders requesting inspection). Moreover, being on unfriendly terms

with a company and an intention to communicate the information obtained during the inspection with other stockholders are not proper reasons for denying a shareholder the right to inspect a corporation's books and records. *See id*. at 818-19. Finally, the trial court was in the best position to evaluate the "tenor" of the witnesses' testimony regarding the nature of Davila's contacts with them and is the sole judge of the weight to give their testimony. *See City of Keller*, 168 S.W.3d at 819. Accordingly, we conclude the evidence is legally and factually sufficient to support the trial court's finding that Hair Ventures had a proper purpose for seeking the inspection, and Biolustre's second issue is overruled.

In its third issue, Biolustre' complains of the trial court's admission of a "business agreement" into evidence. Although Biolustre' lists the issue as being presented for review, Biolustre's brief contains no argument or cited authorities pertaining to the issue as required to properly present the issue for appellate review. TEX. R. APP. P. 38.1(i). Moreover, the agreement is not contained in the record presented to this court. Finally, although the testimony established that the agreement gave Woods additional rights with regard to reviewing the company's books, no evidence was presented to establish that the agreement affected Hair Ventures's right to examine Biolustre's books and records pursuant to the Texas Business Organizations Code. Accordingly, Biolustre's third issue is overruled.

## CONCLUSION

The trial court's order is affirmed.

Catherine Stone, Chief Justice